case which is Banco Panamericano v. Peoria. Mr. Curley. Good morning. I may please the court. My name is Phillip Curley, and I represent the plaintiff, Appellant Banco Panamericano, Inc. I'd like to start off by discussing the benefit that Peoria enjoys with respect to the property at issue here, which is the interconnect and the collection system. There is no dispute that Peoria enjoys the exclusive use of that property, originally built and operated by the Detterher Resource Technology Corporation, or RTC. And Peoria retains two very significant benefits from its exclusive use of that property. The first is that Peoria uses the property for free, having paid nothing for its construction. The second benefit is that Peoria uses the property to bring it into compliance with its federal and state environmental responsibilities. These two benefits are worth many millions of dollars to Peoria. So you're claiming, Mr. Curley, as I understand it, that you have a security interest, right? Yes, Your Honor. So do you want it back? You want the pipes and the cables and the valves and the tanks back? That's one possible outcome. What we want is to be compensated for the detriment that we've suffered, the loss of the value of the collateral. Well, let's put it this way. Could your position be any stronger than RTC's, the Detter's? Certainly. How? Well, first of all, RTC is no longer in business. No, no, no. How could your rights in that property be any greater than theirs were? Because we have a security interest in the property that sits on the landfill. And RTC is no longer around. Assuming that the ownership of that property passed to Peoria, then our super-priority lien rights travel with that property and the lien still exists. Theoretically, we could seek to foreclose. We could schedule a UCC sale. As we discussed in our brief, those options aren't really available to us because after the conversion plan shut down, Peoria changed the collateral. It disconnected the interconnect and the collection system from the plant. Let me try to get at this a somewhat different way. Under the lease between Peoria and RTC, your Detter, how could the below-ground equipment, the below-ground installations and the electrical interconnect ever have gone back to RTC without Peoria's consent? The way Paragraph 5 of the lease worked, once it was terminated, if Peoria chose and sent a notice of election to retain that property, then it would go to, it would remain, I should say, it would go to Peoria. Right. If it fails to make the notice of election, which it did here, as a district court found, Peoria's position is that the 90-day provision kicked in and the title therefore transferred over 90 days. But however it might have transferred, if it did, it transferred to Peoria subject to the super-priority lien. There's a provision, though. You're trying to argue that you've got a superior position, as I understand it, to RTC, that you, and I'm looking at this basically as these are, this is a lessee and a landlord and fixtures, right? Fixtures that couldn't possibly be removed as a practical matter without doing a lot of damage and spending a lot of money, right? There would certainly be a cost involved. But there is value to those, to both the below-ground and the above-ground structure. We're talking here about the below-ground, right? The interconnected is above-ground. Okay. But we're not talking about the so-called equipment. That's not an issue, is it? Paragraph 5 talks about equipment, structures, and below-grade installations. We are not talking about equipment, correct? Okay. So under what circumstances under this lease would RTC have been able to keep or remove the property in which you're claiming a lien without Peoria's consent under paragraph 5 of the lease? RTC could and would obtain the property if Peoria failed to serve a notice of election to retain, which it did. Then the property stays with RTC. I don't understand how, but it would have no rights in it. I mean, the lease is terminated. It has no right to use them. The stuff is installed. I don't understand how you're any better off than RTC would be. Well, we're not arguing and haven't argued that we're better off than RTC, nor do we argue that our rights arise under the lease. And, in fact, the district court specifically found in its original decision, its first decision, that our rights did not arise under the lease. Our rights arise under the lien order. And so the question we believe posed by this unjust enrichment claim is who has a better claim to the benefit of the property? Is it Banco or Peoria? And we believe we have a better claim to the benefit of the property. Yeah, but how can the lien order give you more rights than RTC would have had in this property under the terms of the lease? I don't think that the lien order has anything to do with the lease. Well, the lien order gives Banco security interest in the assets. In fixtures on the city's land, right? On the landfill, yes, Your Honor. Yeah. So they're the owners of the property. They're the owners of the real estate, correct? Yes, sorry, the real estate. Well, that's. That's helpful. Thank you. And you seem to be saying you've got a right to pull those fixtures out of there, right? We have a security interest in that personal property, yes, Your Honor. Some of it would have to be pulled out. Some of it would not. What does it secure? It secures pre-petition loans by the appellant and debtor in possession funding. Part of the bankruptcy estate. Yes, part of the bankruptcy estate. And so after the bankruptcy was filed, my client Banco stepped up and provided the debtor in possession financing in order to keep the project, in order to keep RTC running, including this project at Peoria, as a result of which Peoria continued to receive royalties for many years. I want to talk a little bit, but focus really on the detriment that Banco has suffered here because I think it's responsive, at least in part, to Your Honor's question. Once that conversion plant was shut down, Peoria disconnected the interconnect and the collection system from the conversion plant and altered it. It brought in a new flare system and attached the collection system and the interconnect to their new flare system so they could remain in compliance with their environmental obligations. But as a result, that rendered the value of the collateral, rendered it worthless. It's of no use to anyone else other than Peoria. What rights did RTC have to it after termination of the lease? After termination of the lease, RTC had the right to retain that property if Peoria failed to... Retain it, not operate it. True. And retain it. What language in the lease gave it that right? I think in paragraph five it says when the lease terminates for any reason, Peoria has to within 30 days give a notice of election of the property which they retain. They can, right? They can. And if they don't, then the property remains with RTC. And it has the obligation to restore premises if Peoria insists, right? Correct. Sole expense, lessor satisfaction, and so on. And plans for removal would have to be approved by Peoria, right? Correct. So they've got this theoretical ownership over property they can't do anything with. Well, it may not be of any value to RTC, but it certainly is of value to Banco as a lien holder. So after termination, suppose there had been no bankruptcy, but after termination, do you think Peoria would have been obliged to continue paying RTC? Once the contract terminated, the lease terminated and it was ten years and three or five extensions, the parties would have either negotiated a new lease or the project would have been shut down. No, terminated. Suppose it's terminated. At that point, it's either a new lease is negotiated or the conversion plan is shut down, everything is shut down, and then the Paragraph 5 kicks in, and RTC keeps on property, Peoria keeps on property. And does Peoria have to keep paying RTC? If they don't have to keep paying RTC, why should they pay you? Well, because RTC is providing, would be providing a service, which is collecting. No, it's over. I know, but I'm trying to answer. Because Banco is doing something different. It doesn't have to pay RTC because RTC is no longer converting the landfill gas electricity. But the collection system, the interconnect, is being used by Peoria, notwithstanding the termination of the lease. So in that situation, you think Peoria would have to have kept paying RTC? I do not, Your Honor. Then why should they pay you? Because of our unjust enrichment claim, we look at what the benefits are to the two parties, benefits and detriments. Peoria has now the use of this collection system and interconnect, which costs $2.4 million, which Banco financed, for which Peoria paid nothing. Peoria has been using that system for 20-plus years to meet its environmental obligations. Those are two very significant benefits to Peoria, which under the law of unjust enrichment should be considered. So you made a bad deal. You lent money to an operation that didn't work out very well but didn't have any real continuing rights in this property. I don't think it was a bad deal. The deal that Banco got was a security interest in that property. The deal here is an incredibly good deal that Peoria got, which for 20 years, without paying anything for the collection system or interconnect, is now using it for free and is using it to meet its environmental obligations. And all we're asking for is recompense for the detriments that we suffered by the fact that our security interest is now worthless because of what Peoria has done. Why wasn't it worthless when you got it? Because when we got it, the plant was operating. The landfill gas was being collected and converted to electricity. RTC was making money and Peoria is making money. Right, but the security interest is only useful to you when disaster strikes, right? As long as the loan is being paid, the security interest really doesn't come into play. But a security interest in these below-ground pipes doesn't seem very valuable. Well, it has value to Banco. It had value to the bankruptcy court, which provided the security interest in the lien order. And I think it's a question of how much value there is. You're now on your rebuttal time. Thank you. I'll see you the rest of my time for rebuttal. Okay. Thank you, Mr. Curley. Ms. Williams? Thanks. And don't disappear. I didn't realize there was a stop button. Okay, there we go. Okay, thank you. Thank you, Your Honor. My name is Sunny Williams, and I'm here representing the city of Peoria, the defendant, and along with my co-counsel, Jennifer Morris, who's at the council table, who represents the county of Peoria. And, Your Honor, you're correct. There was no value that – well, let me restate this again. I think Banco makes this case a lot more complicated than what it should be. It would be against the fundamental principle of justice, equity, and good conscience for Peoria to pay Banco for a bad deal that Banco made in financing RTC during the bankruptcy. And two, Peoria's rights in the system, the underground system, trumps the security priority interests that Banco obtained through the RTC's bankruptcy proceeding. And two, Banco has failed to show any connection between the detriment that he says that he suffers to Peoria's benefit. We're talking about, and I believe this – Your Honor, you questioned the appellant's counsel regarding, well, what does it mean when the lease is terminated? When the lease is terminated, Title II and ownership of any of the lessee's property, which is not removed within 90 days after termination, passes to the lessee. And that's Peoria. So if you look at the whole picture of this, what Banco wants us to do is to pay for their bad loan that they gave to RTC, that they gave willing to RTC. And why should an innocent third party like Peoria have to pay on something that it was never contractually obligated to pay? The concept of Peoria being innocent shocks my conscience. In this case, we are, Your Honor. But, you know, in this matter, what we have is a lease agreement between RTC and Peoria, in which Peoria was never to pay for the installation costs of the system, the interconnect, or anything. And for that right, for RTC's right to pull methane gas from our own land, they were to sell that to Amer and SoCo, whatever utility company, and in return for having their permission to use our land, RTC gave us 6% from the sale. And so we were never to pay RTC. So why in the world would we have to pay Banco for something? It doesn't make any sense. And that's why it's almost laughable that we're here, that for some reason Banco wants us to pay for their bad deal with RTC. And, again, it would, you know, if you look at the competing claim, what does super priority lien means? It just means that you are first in line if there's a payment to RTC. We don't owe any payment to RTC. If this was, even if the system worked, which it stopped working in 2008, even if the system worked, we weren't supposed to pay RTC anything. And then why in the world would we have to pay Banco, who financed the money, for something? Unjust enrichment is what he says. What was that, Your Honor? Unjust enrichment, he says. Well, and they have improved it. That's what he says. Yes, they have improved it. They have to show that in this situation that somehow that we are benefiting for. . . They have to show it was unjust. Yes. And we did not use the system unjustly. We used it because we were given the right to use it and retain it under the lease agreement. And no one took the system. And this is a system that failed in 2008. This is all pipes that are underground. If Banco wanted to enforce this lien, it could have done a foreclosure, it could have done a sale, and it could have paid millions of dollars to remove that system. And I'm guessing nobody would want that system because it's of no use. It's old pipes that was conferred and altered because we had every right to alter it. We altered it to flare it up. And one thing that is kind of convoluted argument is that somehow we're benefiting because we're not paying some type of fines that the EPA would have imposed, 37,000 a day fine, and somehow that we have to pay Banco for that fine that we weren't even imposed. And even if we paid that fine, it would have been to the U.S. EPA, not to Banco, not to RTC. So when Banco comes here and if they foreclosed on their super priority lien, they would have stepped in the same shoes that RTC had in the lease agreement. And RTC's shoes is that we owe nothing to RTC, and therefore we owe nothing to Banco. And so I think that under all the cases that we cited in our brief, and the district court rightfully ruled that Banco has failed to prove unjust enrichment. And Banco spends, again, a considerable amount of time in its reply brief talking about the risk it made in loaning RTC and that it kept RTC afloat. It kept them able to function for five or six years. And in their reply brief, they said that inequity that would result from Peoria's view of the world is manifest. However, this court, as this honor has pointed out, it would be true inequity if Banco was successful in this case. Banco should not have to pay for Banco's risk in giving the money to RTC. You said that about four times now. I'm sorry. I'm emphasizing that. So if there's no other questions for me, again, we want to make sure that there was no error shown by Banco in the brief on his order denying Banco's motion for summary judgment and granting Peoria's summary judgment. So for those reasons, we request this court to affirm the district court's finding. Thank you, Ms. Williams. Mr. Curley, do you have anything further? The question here is not, I believe, the deal that Banco and RTC made. That was a bad deal, as it turned out, with hindsight. What is at issue here is whether or not the deal, if you will, that Banco made with the bankruptcy court to advance money as a debtor and possession lender in return for the super priority lien rights is a deal that should be enforced. Now, Peoria just said that these pipes in the system is of no use, but that clearly is not true because they are using it, and they have used it since the plant was shut down to meet its environmental obligations. The heart of our unjust enrichment claim here is that Peoria unjustly, when the plant was shut down, seized control of the property, the interconnection. Seized control? It's on the landfill. It unilaterally took control of it and altered and changed the use of that property. So that collateral, which had a value, now has no value to anyone other than Peoria, which is why a foreclosure would have been impractical and why a UCC sale would have been impractical. So I would ask the court to please, in this unjust enrichment claim, focus on the benefits that Peoria received, the detriment that Banco suffered, and then weigh the various factors we discussed in our brief as to whether equity, good conscience, and justice dictate that Banco should be compensated for the detriment it has suffered. Okay. Thank you. Well, thank you to both counsel. Next case.